UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AURELIA EMILY ALLBERT,<br><br>      Plaintiff,<br><br>  v.<br><br>HOLLAND AMERICA LINE, N.V.;<br>DOES INC. 1–3; and JOHN DOES<br>1–3,<br><br>      Defendants. | C23-0093 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion to dismiss, docket no. 13, brought by defendant Holland America Line, N.V. ("HAL"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

This action arises from plaintiff Aurelia Emily Allbert's voyage on a 35-day round-trip cruise from California to Hawaii and Tahiti. Am. Compl. at ¶ 5 (docket no. 5). On or about February 27, 2022, Plaintiff boarded a cruise ship operated by HAL. *Id.* Plaintiff alleges that, shortly after departing from San Diego, California, she was sexually assaulted in her cabin by three separate men on three separate occasions. *Id.* Plaintiff alleges that she was sexually assaulted by a man who she believes to be the vessel's food and beverage manager, a man who allegedly owns a "Holland America entity," and a

ORDER - 1

man employed as a traveling lecturer on the vessel. *Id.* Although these incidents "troubled her greatly," Plaintiff did not report the sexual assaults to the vessel's management. *Id.*

Additionally, Plaintiff allegedly experienced a number of "less serious, but annoying" issues during her cruise. *Id.* at ¶ 6. These issues included (i) a broken mini-fridge and water leak in her cabin, (ii) an extremely noisy passenger in the adjoining cabin, and (iii) problems with her security access card, which served as "her ticket" to leave or return to the vessel on port calls. *Id.* Plaintiff alleges that the vessel's security manager treated her disrespectfully and refused her request for a new card. *Id.* Plaintiff believes her treatment might be the result of racial discrimination because she was born and raised in China. *Id.* Plaintiff also alleges that the vessel's crew confiscated bottles of alcoholic beverages she had purchased ashore and intended to sell at her business when she returned home to New York. *See id.* at ¶¶ 7, 8.

On or about March 17, 2022, after the vessel's crew had repeatedly refused to address her complaints, Plaintiff decided "that she needed to do something dramatic to get management's attention." *Id.* at ¶ 8. While the vessel was moored at the island of Raiatea, Plaintiff climbed over a railing onto a narrow platform above the water and "waited for a member of the crew to come out and ask her what she was doing." *Id.* After approximately 45 minutes, members of the vessel's crew arrived and brought Plaintiff back on deck. *Id.* Although Plaintiff explained many of her concerns, she continued to feel "greatly disrespected" and was informed that she should prepare to leave the vessel that evening. *Id.* While Plaintiff was packing her belongings, the

ORDER - 2

vessel's doctor came to her cabin and directed her to report to the medical center right away.  *Id.*  Because she was concerned about "what might happen in the medical center," Plaintiff asked if she could call her husband (who had remained in New York for business) or speak with her friends onboard the vessel.  *Id.*  The doctor allegedly denied her requests and informed Plaintiff that she could return to her cabin if she agreed to go to the medical center for a blood test.  *Id.*  Once in the medical center, the doctor allegedly injected Plaintiff with an unknown medication without her consent.  *Id.*  Before passing out, Plaintiff allegedly heard the vessel's security manager ask another security staff member to turn off his body camera.  *Id.*

       Plaintiff alleges that the vessel's crew held her in the medical center without her consent for five days, and repeatedly denied her requests for a change of clothing.  *Id.* at ¶ 9.  While in the medical center, Plaintiff "believes she was injected" with anti-psychotic medications.  *Id.*  Although the vessel's doctor was not a psychiatrist and was purportedly unqualified to diagnose Plaintiff with any mental health conditions, Plaintiff alleges that the doctor incorrectly diagnosed her with mania and psychotic symptoms after consulting with an osteopath in Miami, Florida who had some training in psychiatry.  *Id.*  Plaintiff alleges that the vessel's doctor and the osteopath agreed on a diagnosis that would "justify" her detention in the medical center.  Plaintiff alleges, however, that the doctor misinterpreted her actions and statements and that she has no prior history of mental health conditions.  *Id.* at ¶¶ 9, 12.

       On or about March 22, 2022, after the vessel had reached the island of Tahiti, the vessel's doctor arranged for an ambulance to take Plaintiff to a psychiatric hospital in the

ORDER - 3

city of Papeete. *Id.* at ¶¶ 1, 10. Although Plaintiff refused to sign an agreement to pay for the expenses HAL allegedly incurred from Plaintiff's time in the vessel's medical center, HAL charged her credit card approximately $16,000 without her consent. *Id.* at ¶¶ 10–11. Following Plaintiff's arrival at the psychiatric hospital, a physician at the facility allegedly called the vessel and was informed that HAL's insurance would pay for Plaintiff to return home to New York. *Id.* at ¶ 10. HAL allegedly failed to arrange Plaintiff's travel and she remained in the hospital for six and a half weeks, where she was subject to multiple "depressing conditions." *Id.* On or about April 9 and 16, 2022, a hospital staff member allegedly sexually assaulted Plaintiff. *Id.* Plaintiff contends that the psychiatric hospital billed her $89,000 for her stay. *Id.* at ¶ 12.

On or about May 2, 2022, the hospital released Plaintiff with "a clean bill of health." *Id.* at ¶ 10. Without the money to travel home, local social services allegedly placed Plaintiff in two shelters on Tahiti, where she remained for another six and half weeks. *Id.* Plaintiff alleges that a local man on probation sexually assaulted her while she stayed at one of the shelters. *Id.* On June 17, 2022, Plaintiff finally returned home after local immigration authorities allegedly required HAL to arrange her travel. *Id.* at ¶ 11. On January 21, 2023, Plaintiff commenced this action against HAL and certain unnamed affiliates, subsidiaries, employees, and/or independent contractors of HAL (the "Doe Defendants"). Plaintiff brings claims for (i) breach of contract against HAL, (ii) negligence against HAL, and (iii) negligence against the Doe Defendants. Am. Compl. at ¶¶ 14–19 (docket no. 5). Plaintiff also brings claims for (iv) unlawful imprisonment, (v) assault and battery, (vi) intentional infliction of emotional distress,

(vii) conversion/theft, and (viii) medical malpractice against unspecified defendants. *Id.* at ¶¶ 20–29. HAL now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Plaintiff's claims against the entity.[1]

**Discussion**

**1.     Motion to Dismiss Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v.*

---

[1] As an initial matter, HAL argues that the operative complaint is an impermissible "shotgun pleading" in violation of Rules 8(a)(2) and 10(b). As a result, HAL contends that it is "nearly impossible . . . to determine with any certainty which factual allegations give rise to which claims for relief." *See E.K. v. Nooksack Valley Sch. Dist.*, No. C20-1594, 2021 WL 1531004, at *2 (W.D. Wash. Apr. 19, 2021) (quoting *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018)). Unlike Plaintiff's claims for breach of contract against HAL and negligence against HAL and the Doe Defendants, the amended complaint does not specify whether Plaintiff brings her remaining claims against HAL and/or certain Doe Defendants. Any amended pleading in this action must allege claims against particular defendants.

ORDER - 5

*City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  *Twombly*, 550 U.S. at 570.  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  The parties do not dispute that this matter sounds in admiralty, and the Court will apply admiralty law over conflicting state substantive law.  *See Ocean Beauty Seafoods LLC v. CAPTAIN ALASKA*, 603 F. Supp. 3d 1005, 1011 (W.D. Wash. 2022) (citing *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 228 (1986)).

**2.      First Claim:  Breach of Contract Against HAL**

"A cruise line passage contract is a maritime contract governed by general federal maritime law."  *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 834 (9th Cir. 2002).  To state a claim for breach of a maritime contract, a plaintiff must allege (i) "the existence of an agreement," (ii) "adequate performance of the contract by the plaintiff," (iii) "breach of contract by the defendant," and (iv) "damages."  *W. Towboat Co. v. Vigor Marine, LLC*, 544 F. Supp. 3d 1100, 1116 (W.D. Wash. 2021) (citation omitted).  Although Plaintiff alleges that she entered into a contract with HAL for a 35-day cruise, *see* Am. Compl. at ¶ 15, she has failed to identify which provision of the contract HAL allegedly breached.  Instead, Plaintiff alleges only that HAL's website describes how its employees are "committed to providing a truly extraordinary experience for [its] guests."  *Id.*  This allegation is insufficient.  The operative complaint contains no factual allegations describing how HAL allegedly breached its contract with Plaintiff, and her first claim for

breach of contract against HAL is DISMISSED without prejudice and with leave to amend.

**3.      Second and Third Claims:  Negligence**

"The elements to establish a claim of negligence under maritime law are the same as the elements of negligence under common law," and a plaintiff must allege (i) the existence of a duty, (ii) a breach of that duty, (iii) causation, and (iv) damages.  *W. Towboat Co.*, 544 F. Supp. 3d at 1125.  In this case, Plaintiff alleges that HAL owed its passengers a duty to provide safe passage and to ensure that its passengers "were not exposed to acts of aggression, including unwanted sexual advances, or discriminatory treatment."[2]  Am. Compl. at ¶ 17.  Plaintiff alleges that HAL breached this duty by failing to train and/or monitor its employees and independent contractors, *id.*, but she has not pleaded any factual allegations to support this claim.

"Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program and this negligence caused a plaintiff's injury." *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020) (quoting *Doe v. NCL (Bahamas) Ltd.*, No. 16-cv-23733, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016)). In this case, Plaintiff has not pleaded any facts alleging that HAL "negligently

---

[2] The operative complaint in this matter suggests that certain crewmembers might have discriminated against Plaintiff based on her race.  *See*, *e.g.*, Am. Compl. at ¶ 6 ("[Plaintiff] concluded that perhaps she was a victim of racial discrimination because . . . she was born and raised in China.") & ¶ 25 ("[Certain crewmembers] did not like [Plaintiff] because she is a free spirit and an assertive woman, or perhaps because she is Chinese[.]").  Although Plaintiff alleges that she was "perhaps" a victim of racial discrimination, the operative complaint contains no factual allegations of racial discrimination.

ORDER - 7

implemented and operated" a training program and that its negligence caused the unnamed individuals to sexually assault Plaintiff or caused the doctor to provide allegedly inadequate medical care. *See id.* Plaintiff's allegations of negligent monitoring or supervision are also deficient. "Negligent supervision 'occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment.'" *Id.* at 1324 (quoting *Doe*, 2016 WL 6330587, at *6). A plaintiff must allege that (i) "the employer received actual or constructive notice of an employee's unfitness," and (ii) "the employer did not investigate or take corrective action such as discharge or reassignment." *Id.* The operative complaint in this action does not allege that HAL had actual or constructive notice of the unnamed individuals' conduct or that it failed to take corrective action in light of its knowledge. In fact, with respect to her allegations of repeated sexual assaults, Plaintiff alleges that she did not inform the vessel's management. Am. Compl. at ¶ 5. Instead, Plaintiff merely recites the elements of negligence in a cursory fashion. Plaintiff's second claim for negligence against HAL is therefore DISMISSED without prejudice and with leave to amend.

Although Plaintiff's third claim for negligence is directed at the Doe Defendants, Plaintiff appears to suggest that HAL should be held liable for the intentional conduct of its employees and/or independent contractors. *Id.* ("[Those who treated Plaintiff] badly were nonetheless under the control of HAL."). For the reasons discussed above, Plaintiff

has not pleaded sufficient factual content to plausibly allege HAL's negligence, and her third cause of action is DISMISSED without prejudice and with leave to amend.

**4.      Fourth Claim:  Unlawful Imprisonment**

Plaintiff alleges that the vessel's doctor and security staff physically detained her in the medical center for five days and five nights and repeatedly denied her requests to contact her husband and friends.  Am. Compl. at ¶ 21.  To state a claim for unlawful imprisonment, a plaintiff must allege an "intentional deprivation of movement or freedom to remain in the place of one's lawful choice." *Osborne v. Coster*, No. C15-26, 2015 WL 4930639, at *6 (W.D. Wash. Aug. 18, 2015) (citing *Moore v. Pay'N Save Corp.*, 20 Wn. App. 482, 486, 581 P.2d 159 (1978)).[3]  Such restraint or imprisonment "may be accomplished by physical force alone, by threat of force, or by conduct reasonably implying that force will be used."  *Id.*  Although HAL argues that its crew's conduct was justified given Plaintiff's actions onboard the vessel, the Court must accept Plaintiff's well-pleaded factual allegations as true, *see Usher*, 828 F.2d at 561, and Plaintiff has alleged that the vessel's doctor was not qualified to diagnose her with a mental health condition, fabricated his diagnosis to justify Plaintiff's detention, misinterpreted Plaintiff's statements as expressing suicidal ideations, and held Plaintiff in the vessel's medical center against her will for a number of days.  Am. Compl. at ¶ 10.  Under the

---

[3] Although federal admiralty law applies in this action, the parties rely on Washington law for a number of Plaintiff's tort claims.  Because substantive admiralty and Washington law "do not appear to conflict on the issues raised in this motion," the Court will apply the law cited in the parties' briefs.  *See Ocean Beauty*, 603 F. Supp. 3d at 1011 (explaining that courts must apply admiralty law over conflicting state substantive law).

current procedural posture, the Court cannot dismiss this claim.  HAL's motion is therefore DENIED as it relates to Plaintiff's fourth claim for unlawful imprisonment.

**5.       Fifth Claim:  Assault and Battery**

Plaintiff alleges that she was sexually assaulted on six separate occasions and that the vessel's doctor injected her with anti-psychotic drugs without her consent.  *See* Am. Compl. at ¶¶ 5, 9, 10, 23.  A battery is an "intentional and unpermitted contact with the plaintiff's person." *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 504, 325 P.3d 193 (2014).  An employer, however, cannot be held vicariously liable for an employee's tort if the employee's conduct was (i) "intentional or criminal," and (ii) "*outside the scope of employment*." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53, 59 P.3d 611 (2002) (emphasis in original, quoting *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 56, 929 P.2d 420 (1997)).  With respect to Plaintiff's allegations of sexual assault, the Court is uncertain as to whether Plaintiff alleges that HAL is vicariously liable for the criminal actions of individuals committed outside the scope of their employment (a claim that is not cognizable against HAL), or whether Plaintiff alleges that HAL is liable for its own negligence (a separate cause of action).  *See*, *e.g.*, Am. Compl. at ¶ 23 ("The choice to leave [Plaintiff] at the hospital was at a minimum negligent[.]").  Plaintiff's claim against HAL for assault and battery is DISMISSED without prejudice and with leave to amend.[4]

---

[4] To the extent that Plaintiff intends to bring this claim against the Doe Defendants in their individual capacities, Plaintiff must identify these defendants with particularity.  This identification should not be difficult for Plaintiff to accomplish because she apparently knows the names of the alleged offenders. *See* Resp. at 4–5 (docket no. 18).

ORDER - 10

**6.      Sixth Claim:  Intentional Infliction of Emotional Distress**

Plaintiff alleges that she suffered "enormous stress and anxiety" caused by the security manager's refusal to issue her a new security access card, the doctor's decisions to detain her in the vessel's medical center and move her to a local psychiatric facility, a malfunctioning minifridge and water leak in her cabin, and the confiscation of alcoholic beverages she had purchased onshore.  Am. Compl. at ¶ 25.  A defendant commits the tort of intentional infliction of emotional distress when he or she, through extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another.  *See Wallis*, 306 F.3d at 841–42.  The bar for an intentional infliction of emotional distress claim is high, and the Ninth Circuit has recognized that a defendant's conduct must be extreme and outrageous.  *Id.* at 841.  "Liability [for an intentional infliction of emotional distress claim] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)).  Plaintiff's allegations regarding her security access card, the state of her cabin, and the confiscation of certain alcoholic beverages do not rise to this level, and Plaintiff has not sufficiently alleged how the doctor's decisions were so outrageous as to support an intentional infliction of emotional distress claim in light of Plaintiff's decision to climb over the vessel's railing.  Plaintiff's sixth claim against HAL is therefore DISMISSED without prejudice and with leave to amend.

7. **Seventh Claim: Conversion/Theft**

Plaintiff alleges that HAL's confiscation of certain alcoholic beverages and its decision to charge her credit card for the care she received in the vessel's medical center constitute conversion and/or theft. Am. Compl. at ¶ 27. To state a claim for conversion, a plaintiff must allege (i) "willful interference with chattel belonging to the plaintiff," (ii) "by either taking or unlawful retention," (iii) "thereby depriving the [plaintiff] of possession." *Burton v. City of Spokane*, 16 Wn. App. 2d 769, 773, 482 P.3d 968 (2021). HAL does not challenge the factual sufficiency of Plaintiff's allegations regarding this claim; instead, HAL argues that Plaintiff cannot recover noneconomic damages under this theory of liability. *See, e.g.*, *Merchant v. Peterson*, 38 Wn. App. 855, 858, 690 P.2d 1192 (1984) ("Absent willful misconduct, the measure of damages for conversion is the fair market value of the property at the time and place of conversion."). Although Plaintiff might not recover noneconomic damages for the alleged conversion, HAL ignores Plaintiff's allegation that its conduct caused her "financial harm." Am. Compl. at ¶ 27. Accordingly, HAL's motion is DENIED as it relates to Plaintiff's seventh claim.

8. **Eighth Claim: Medical Malpractice**

Finally, Plaintiff alleges that the vessel's doctor and the osteopath in Florida committed medical malpractice when they diagnosed her with mania and psychotic symptoms. Am. Compl. at ¶¶ 9, 29. Although this claim clearly alleges that the physicians' treatment of Plaintiff fell below the requisite standard of care, *id.* at ¶ 29, the Court is uncertain as to whether Plaintiff asserts this claim against HAL or the doctor. Under maritime law, where a shipowner employs a physician to serve on its vessel to

ORDER - 12

treat passengers, the shipowner is liable only if it negligently selects that physician. *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988) (citing *The Korea Maru*, 254 F. 397, 399 (9th Cir. 1918); *The Great Northern*, 251 F. 826, 830–32 (9th Cir. 1918)). Because the operative pleading contains no allegations that HAL negligently selected the vessel's physician, Plaintiff's eighth claim against HAL is DISMISSED without prejudice and with leave to amend.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) HAL's motion to dismiss, docket no. 13, is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED as it relates to Plaintiff's first claim for breach of contract against HAL, second claim for negligence against HAL, third claim for negligence, fifth claim for assault and battery, sixth claim for intentional infliction of emotional distress, and eighth claim for medical malpractice, and these claims are DISMISSED without prejudice and with leave to amend.

    b. The motion is DENIED as it relates to Plaintiff's fourth claim for unlawful imprisonment and seventh claim for conversion.

(2) Plaintiff shall file any amended complaint on or before July 28, 2023. Any answer or response is due within fourteen (14) days after the amended complaint is filed. *See* Fed. R. Civ. P. 15(a)(3).

(3) Any amended complaint shall specify whether Plaintiff brings her claims against HAL and/or the Doe Defendants and must clearly identify the factual allegations which give rise to those claims for relief and the Doe Defendants to the extent possible.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 20th day of June, 2023.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge