UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AURELIA EMILY ALLBERT, | |
| Plaintiff, | |
| v. | C23-0093 TSZ |
| HOLLAND AMERICA LINE, N.V., et al., | ORDER |
| Defendant. | |

THIS MATTER comes before the Court on Defendant's motion to dismiss Plaintiff's second amended complaint, docket no. 25. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

This action arises from plaintiff Aurelia Emily Allbert's voyage on a 35-day round-trip cruise from California to Hawaii and Tahiti. Second Am. Compl. at ¶ 8 (docket no. 24) ("SAC"). On approximately February 27, 2022, Plaintiff boarded a cruise ship operated by Defendant Holland America Line, N.V. ("HAL"). *Id.* Shortly after departing San Diego, California, Plaintiff met Jim McParland, a "paid lecturer" for the cruise. *Id.* Plaintiff loaned McParland a book. *Id.* When he returned the book to

ORDER - 1

Plaintiff's cabin, McParland asked to come in. *Id.* Plaintiff, not expecting any trouble, invited McParland into her room. *Id.* McParland then made clear he wanted to have sex with Plaintiff. *Id.* Plaintiff alleges that, despite her repeated objections and requests for him to leave, McParland sexually assaulted her. *Id.* On a separate occasion while on the cruise, Plaintiff was alone in a cabana with a young man identified only as a "Food and Beverage Manager" for Defendant named Chris. *Id.* at ¶ 9. Plaintiff alleges that, while in the cabana with Chris, he took her hand, placed it on his genitals, and asked if she wanted more. *Id.* Plaintiff stated that she was not interested and removed herself from the cabana. *Id.*

Plaintiff complained about the quality of the accommodations on the cruise. *See id.* at ¶ 10. Dissatisfied with the responses to her complaints, she attempted to make an appointment with the vessel's captain, Friso Kramer. *Id.* Plaintiff was unable to do so and, when she went to Kramer's cabin to attempt to see him without an appointment, she was turned away by the Staff Captain. *Id.*

On approximately March 17, 2022, frustrated with the responses to her complaints, Plaintiff decided that "she needed to do something dramatic to get the Captain's attention." *Id.* at ¶ 11. While the vessel was moored at the island of Raiatea, Plaintiff climbed over a railing and stood on a ledge overlooking the water. *Id.* Plaintiff alleges that she had no intention of hurting herself or others, and that she was "hoping only to draw attention to her complaints and be afforded a hearing with the Captain or his designee." *Id.* After standing on the ledge for approximately 45 minutes, Plaintiff was "pulled back over the rail" by the Staff Captain and other crew members. *Id.* The crew

ORDER - 2

members sat with Plaintiff for a period of time. *Id.* During this time period, Plaintiff alleges that she requested water, but the crew refused to give her any and that when she requested to eat dinner, she was told she would only be allowed to eat in the Hotel Manager's room. *Id.*

Eventually the Hotel Manager told Plaintiff that she would be leaving the vessel that night and that she would have to arrange for shore lodging and for transportation back to the United States. *Id.* at ¶ 12. She was then escorted to her room and supervised by several men while she began packing. *Id.* While she was packing, the doctor in charge of the vessel's medical center, Le Roux Viljoen, came to Plaintiff's room. *Id.* Viljoen told Plaintiff that she could either voluntarily come to the medical center to have her blood drawn or be forcibly taken to the medical center. *Id.* Perceiving this as a threat, Plaintiff requested to talk first with the police, then with her husband, and finally with her friends on the ship. *Id.* Each request was refused. *Id.* After Viljoen and the crew agreed to let Plaintiff be escorted to the medical center by an older female passenger, Plaintiff agreed to go to the medical center. *Id.* Once they arrived at the medical center, however, the escorting passenger was not allowed to enter. *Id.*

Plaintiff alleges that once she was in the medical center, she was given an injection without her consent. *Id.* at ¶ 13. She further alleges that, prior to losing consciousness, she heard the vessel's chief of security direct another security member to turn off his body camera. *Id.* She alleges that she was subsequently detained in the medical center for five days. *Id.* at ¶ 14. During this time, Plaintiff alleges that she was not allowed to change her clothes and that she was only allowed to a shower "[a]fter

ORDER - 3

being there a few days." *Id.* While in the medical center, Plaintiff was interviewed by Viljoen and by Elizabeth Karwowski, D.O., a doctor located in Florida who interviewed Plaintiff remotely by video. *Id.* Plaintiff alleges that after the interview she was diagnosed "as suffering from mania with psychotic symptoms." *Id.*

On approximately March 22, 2022, after the vessel had reached the island of Tahiti, Viljoen arranged for an ambulance to take Plaintiff to a psychiatric hospital in the city of Papeete. *Id.* at ¶ 10. Although Plaintiff refused to sign an agreement to pay for the expenses HAL allegedly incurred from Plaintiff's time in the vessel's medical center, HAL charged her credit card approximately $16,000 without her consent. *Id.* at ¶¶ 15–16. Following Plaintiff's arrival at the psychiatric hospital, a physician at the facility allegedly called the vessel and was informed that HAL's insurance would pay for Plaintiff to return home to New York. *Id.* at ¶ 15. HAL allegedly failed to arrange Plaintiff's travel and she remained in the hospital for six and a half weeks. *Id.* On or around April 9 and 16, 2022, hospital nurse Arnaud Callaert allegedly sexually assaulted Plaintiff. *Id.* Plaintiff contends that the psychiatric hospital billed her $89,000 for her stay. *Id.* at ¶ 16.

Plaintiff was released from the hospital with "a clean bill of health" on approximately May 2, 2022. *Id.* at ¶ 15. Because she had no money to travel home, local social services allegedly placed Plaintiff in two shelters on Tahiti, where she remained for another six and half weeks. *Id.* at ¶ 16. Plaintiff alleges that a man on probation named Vahiana Cowan sexually assaulted her while she stayed at one of the shelters. *Id.* On

ORDER - 4

approximately June 17, 2022, Plaintiff returned home after local immigration authorities allegedly coordinated with HAL to arrange her travel. *Id.*

The Court previously dismissed Plaintiff's first amended complaint in part and with leave to amend. *See* Order (docket no. 23). Plaintiff's second amended complaint alleges claims for (1) assault and battery, (2) unlawful imprisonment, (3) conversion/theft, (4) medical malpractice, and (5) negligence/gross negligence. Notwithstanding the Court's prior ruling that Plaintiff had stated claims for unlawful imprisonment and conversion/theft, Defendant moves to dismiss the second amended complaint in its entirety.

**Discussion**

**A.    Rule 12(b)(6) Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.

ORDER - 5

1  *Twombly*, 550 U.S. at 570.  The need for plausibility reflects Rule 8(a)(2)'s threshold

2  requirement that a complaint contain "a short and plain statement of the claim showing

3  that the pleader is entitled to relief." *Id.* at 557.  If the Court dismisses the complaint or

4  portions thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203

5  F.3d 1122, 1130 (9th Cir. 2000).

6  **B.**     **Unlawful Imprisonment and Conversion/Theft**

7       The Court denied Defendant's previous motion to dismiss as to Plaintiff's

8  unlawful imprisonment and conversion/theft claims.  *See* Order at 9–10, 12 (docket no.

9  23).  Notwithstanding the Court's prior ruling, Defendant moves again to dismiss these

10  claims.  Defendant contends that this second attempt at dismissal is appropriate because

11  Plaintiff has materially amended the claims to the point that the Court's prior analysis no

12  longer applies.  The Court disagrees.  Having reviewed Plaintiff's first amended and

13  second amended complaints, the briefing on Defendant's motions to dismiss, and its prior

14  Order, the Court concludes that these claims remain in the case.[1]  Accordingly,

15  Defendant's motion is DENIED as to Plaintiff's unlawful imprisonment and

---

[1] Defendant's argument that the Cruise Contract bars Plaintiff's conversion claim is unpersuasive. Defendant relies on Section 5 of the Cruise Contract for the proposition that Plaintiff was "contractually precluded from bringing alcoholic beverages aboard." Mot. at vii (docket no. 25). Section 5 of the Cruise Contract, however, also provides that "Guests of legal drinking age may bring wine and champagne on board, but a corkage fee of US $20.00 . . . will be applied to each bottle (750 mL in volume or less). Limitations apply. Wine brought in quantities deemed to be excessive by the vessel or security will be refused. Limitations apply." Cruise Contract at § 5, pg. 16, Ex. 1 to Mot. (docket no. 25-1). There is an issue of fact as to whether Plaintiff brought an "excessive" quantity of wine onboard under the terms of the Cruise Contract.

ORDER - 6

conversion/theft claims for the reasons stated in the Court's previous Order. *See* docket no. 23 at 9–10, 12.

### B.   Assault & Battery

Plaintiff alleges that she was sexually assaulted on two different occasions by HAL's employees, once by McParland and once by Chris. A battery is an "intentional and unpermitted contact with the plaintiff's person." *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 504, 325 P.3d 193 (2014).[2] Cruise ship operators are absolutely liable for the intentional torts of their crew committed against their passengers. *See Morton v. De Oliveira*, 984 F.2d 289, 291–92 (9th Cir. 1993); *accord Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 910–13 (11th Cir. 2004).

Contrary to Defendant's assertions, the SAC adequately identifies facts supporting this claim for relief. Plaintiff has named two of Defendant's employees, McParland and Chris, who impermissibly touched her. She has alleged where the events occurred. And despite Defendant's pedantic arguments regarding the terminology used, *see* Mot. at v n.2 (docket no. 25), Plaintiff alleges facts sufficient to identify the nature of the offensive contact she was allegedly subjected to by Defendant's employees. Taking all alleged facts as true and drawing inferences in Plaintiff's favor, she has adequately pled an assault and battery claim. Defendant's motion to dismiss is DENIED as to this claim.

---

[2] Although federal admiralty law applies in this action, the parties rely on Washington law for a number of Plaintiff's tort claims. Because substantive admiralty and Washington law "do not appear to conflict on the issues raised in this motion," the Court will apply the law cited in the parties' briefs. *See Ocean Beauty Seafoods LLC v. Captain Alaska*, 603 F. Supp. 3d 1005, 1011 (W.D. Wash. 2022) (explaining that courts must apply admiralty law over conflicting state substantive law).

ORDER - 7

C. **<u>Medical Malpractice</u>**[3]

Plaintiff alleges that Viljoen committed medical malpractice when he diagnosed her as being manic and psychotic. Viljoen, however, has neither been served nor appeared in this case. The deadline for joining parties to this case was June 13, 2023, Minute Order (docket no. 21), which was over a month before Plaintiff filed her second amended complaint. Despite knowing of Viljoen's alleged role in the events underlying her claims, Plaintiff made no effort to serve Viljoen or join him to the case prior to the expiration of the deadline. Beyond naming him in her second amended complaint, Plaintiff has not moved to extend the addition of parties deadline, moved to be allowed to effectuate service on Viljoen, or otherwise taken steps to bring Viljoen into the case. The Court will not permit adding additional defendants so far after the deadline.

Even if the Court were to permit the addition of Viljoen at this late date, Plaintiff makes no more than conclusory allegations as to how her diagnosis or other care she received fell below the requisite standard of care. Because Plaintiff has previously been given leave to amend and has still failed to allege a plausible medical malpractice claim, Plaintiff's medical malpractice claim is DISMISSED with prejudice.

D. **<u>Negligence/Gross Negligence</u>**

"The elements to establish a claim of negligence under maritime law are the same as the elements of negligence under common law," and a plaintiff must allege (i) the

---

[3] Plaintiff concedes that she is not pursuing this claim against Defendant HAL. Resp. at 12 (docket no. 26).

ORDER - 8

existence of a duty, (ii) a breach of that duty, (iii) causation, and (iv) damages. *W. Towboat Co. v. Vigor Marine, LLC*, 544 F. Supp. 3d 1100, 1125 (W.D. Wash. 2021). Plaintiff alleges that HAL breached its "duty to familiarize itself with the history, operations, and reputation of the psychiatric hospital in Papeete before dropping [Plaintiff] at its front door." SAC at ¶ 30 (docket no. 24). The parties dispute whether there was an existing duty. However, the SAC still does not state a plausible negligence/gross negligence claim against HAL. The SAC contains only a mere conclusory recitation of the elements of a negligence claim. Plaintiff makes no factual allegations as to how Defendant breached its alleged duty to familiarize itself with the psychiatric hospital. Nor does she allege how Defendant's supposed failure to familiarize itself with the Tahitian hospital caused her injuries. In lieu of factual allegations, Plaintiff asserts that she will be able to produce evidence in discovery that will support her negligence/gross negligence claim. Ninth Circuit "case law does not permit plaintiffs to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (internal citation omitted). The SAC does not assert the "well-pleaded factual allegations" required for Plaintiff's negligence/gross negligence claim to advance to discovery. Because Plaintiff has previously been given leave to amend and has still failed to allege a plausible negligence/gross negligence claim, this claim is DISMISSED with prejudice.

ORDER - 9

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's motion to dismiss Plaintiff's second amended complaint, docket no. 25, is GRANTED in part and DENIED in part.

    (a) Defendant's motion is GRANTED as to Plaintiff's medical malpractice and negligence/gross negligence claims. Plaintiff's Fourth and Fifth claims for relief, SAC at ¶¶ 26–30 (docket no. 24), are DISMISSED with prejudice.

    (b) Defendant's motion is DENIED as to Plaintiff's assault and battery, unlawful imprisonment, and conversion/theft claims.

(2) Plaintiff may proceed on her assault and battery, unlawful imprisonment, and conversion/theft claims only against Defendant Holland America Line, N.V.

(3) The parties are ORDERED to meet and confer and submit, no later than January 19, 2024, a joint status report proposing a revised discovery plan and case schedule.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 29th day of December, 2023.

                                            Thomas S. Zilly
                                            United States District Judge